# STATE v. NAPOLEON VALWELL.

## May Term, 1894.

*Burglary. Evidence of other larceny. Principal and accessory. Argument to jury.*

1. The respondent was indicted for burglary. The evidence of the State tended to show that the respondent and two others went with respondent's team and stole certain sugar from the dwelling of one Damon ; that one of the three remained with the team while the other two entered the house and took the sugar. *Held*, that the State might show that before going to Damon's and while on their way there the three stole sugar at another place.

2. The claim of the respondent was that he remained with the team while the other two stole the sugar against his protest. The evidence tended to show that the team stopped from forty to eighty rods from the house. The court charged the jury that if the respondent advised the stealing of the sugar and remained near enough and so situated while the other two were committing the burglary as to make his personal assistance if needed, in some degree available to them, he would be guilty as a principal. *Held*, correct.

3. A remark of the State's attorney in his argument to the jury that more scoundrels have been permitted to go at large under the doctrine of reasonable doubt than they are aware of, followed by the explanation that this was due to the misunderstanding and misapplication of that doctrine, is not matter of exception.

Information for burglary by breaking and entering the house of William Damon. Plea, not guilty. Trial by jury at the December term, 1893, Caledonia county, Rowell, J., presiding. Verdict guilty. The respondent excepts.

The respondent was informed against jointly with George

Valwell and Peter LeClair, both of whom pleaded guilty before the trial of the respondent.

At the time in question George Valwell, who was the brother of the respondent, lived with him in Burke, and Peter LeClair, who was his brother-in-law, lived near by. The evidence of the state tended to show that upon the night in question these three persons left the respondent's house with the respondent's team for the purpose of stealing sugar; that they first went to one Houghton's where the other two entered the carriage house, stole eight pails of sugar, brought it out and put it into the respondent's wagon; that the respondent remained with the team while the other two were stealing the sugar, but that he knew it was their intention to steal sugar, and that the sugar had been stolen and put into the wagon. To the admission of the testimony as to the stealing of the sugar at Houghton's the respondent objected and excepted. The same was admitted by the court as tending to show knowledge upon the part of the respondent of the guilty character of the transaction in question at Damon's.

From Houghton's the three proceeded to Damon's, and the evidence of the State tended to show that the team stopped from forty to eighty rods from Damon's house; that two of the party went to Damon's house, stole four pails of sugar, brought it out and put it into the wagon, the other one remaining with the team in the meantime, and that the three then drove home and divided the sugar, the respondent taking a portion of it.

The respondent, his brother and LeClair all testified that when they left the respondent's house he did not know that it was their intention to steal sugar at Houghton's, but that the other two informed the respondent of this fact before they reached Houghton's; that after leaving Houghton's, when the respondent learned that it was the purpose of the other two to steal more sugar at Damon's, he advised and

protested against it; that when the other two left the wagon for the purpose of stealing the sugar at Damon's, he refused to wait for them and drove along towards home, but was overtaken by the other two with the sugar before proceeding far. Upon these facts the respondent claimed that he could not be convicted as a principal for the burglary at Damon's. Upon this point the court instructed the jury that a person cannot be convicted of a crime as a principal by reason of having aided and abetted the person who actually commits the crime, unless he is in a position to render, if necessary, some personal assistance; that to be a principal one need not have been actually in the presence of the other principal; that if he was constructively in his presence it was enough; that if the respondent did not go to the house himself and did not consent to the others going, but was unwilling they should go and told them not to go, and advised against it, then his will did not contribute to the act of burglary and he was not guilty of that crime, although he remained there and carried them home; but that if on the other hand he knew they were going to Damon's to steal sugar and to do whatever was necessary to accomplish their purpose, and he wanted it done and encouraged, counselled and advised them, or staid and loitered for them while they did it, and was at the time in such proximity to the house and so situated as to make his personal assistance, if needed, to some degree available to them, then his will did contribute to the act of burglary and he would be guilty as a principal. To the charge upon this point the respondent excepted.

In his argument the state's attorney said to the jury that more scoundrels had been permitted to go at large under the doctrine of reasonable doubt than they were aware of. To this remark the respondent objected and asked an exception, which was allowed. The attorney then went on to say that the trouble was that juries misunderstood and misapplied the doctrine.

*Dunnett & Nelson* and *Harry Blodgett* for the respondent.

Evidence of the burglary at Houghton's was inadmissible. *State* v. *Kelley*, 65 Vt. 531.

The statement of the prosecuting officer in argument to the jury was an unwarranted statement not justified by the evidence and is matter of exception. *State* v. *Hannett*, 54 Vt. 83 ; *State* v. *Lee*, 66 Mo. 165 ; *Yoe* v. *People*, 49 Ill. 410 ; *Hennes* v. *Vogal*, 87 Ill. 242 ; *State* v. *Smith*, 75 N. C. 307 ; *Mitcham* v. *State*, 11 G. A. 615 ; *Tucker* v. *Henneker*, 41 N. H. 317 ; *Hatch* v. *State*, 8 Tex. Ap. 416 ; *Brown* v. *Swinford*, 44 Wis. 282 ; *Rulf* v. *Rumford*, 66 Me. 564 ; *Life Ins. Co.* v. *Chewes*, 36 Ohio St. 201 ; *Haxis* v. *Home Ins. Co.*, 33 Conn. 471 ; *Gould* v. *Moore*, 49 N. Y. 387 ; *Keugles* v. *Guardian Life Ins. Co.*, 57 N. Y. 638 ; *Crandle* v. *People*, 2 Lans. (N. Y.) 212 ; *Northington* v. *State*, 78 Tenn. (14 Lea) 186 ; *People* v. *Dana*, 59 Mich. 550 ; *Rodolph* v. *Londwerben*, 92 Ind. 34 ; *Ferguson* v. *State*, 49 Ind. 33.

The evidence in the case did not tend to connect the respondent, as a principal, with the burglary at Damon's, and admitting the charge of the court to be correct, it was not applicable to the facts in this case. *State* v. *McDonnell*, 32 Vt. 491 ; *Wetherbee* v. *Foster*, 5 Vt. 136 ; *Mason* v. *Silver*, 1 Aik. 367 ; *State* v. *Blow et al.*, 66 Vt. 1.

*H. C. Bates*, state's attorney, for the state.

The charge as to what would make the respondent guilty as a principal was correct. 1 Bish. Crim. Law (5th Ed.), s. 653 *et seq.* ; 1 Arch. Cr. Pr., etc. (7th Ed.), pp. 58, 61, 63.

THOMPSON, J. I. If the respondent, as claimed by him, remained with the team, while Peter LeClare and

George Valwell were committing the burglary at Damon's, evidence showing his participation in the larceny committed shortly before that night at Houghton's, was admissible upon the question whether he remained with the team with the intent and purpose in so doing to aid LeClare and George Valwell in committing the burglary at Damon's. It tended to prove that the respondent was cognizant of the crime which was being committed at Damon's. Steph. Dig. Ev., Art. 11, 12; *State* v. *Kelley*, 65 Vt. 531. The state was bound to show this fact in its opening, and the evidence was not rendered inadmissible by the respondent's subsequent testimony, which showed actual knowledge on his part of the purpose to break and enter Damon's house to steal sugar.

II. The abuse of the doctrine of "reasonable doubt" by juries in criminal cases, was a proper subject of discussion, and we do not think the language used by the state's attorney in discussing it, taken together, presents reversible error.

III. There was no error in the charge of the court in respect to what would make the respondent guilty of the crime of burglary, although he did not go to Damon's house with the others, but remained with the team while they committed the crime. The charge was applicable to the evidence, and, guided by it, it was for the jury to determine whether the facts were such as to warrant a conviction.

*Judgment that there is no error in the proceedings, and that the respondent take nothing by his exceptions.*

Start, J., being engaged in county court, did not sit.